UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.

VICTOR ANGUIERA,

        Defendant.

**DECISION AND ORDER**
11-CR-116S (1)

## I. INTRODUCTION

Presently before this Court is Defendant Victor Anguiera's Motion for Compassionate Release, which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). For the reasons discussed below, Anguiera's motion is denied.

## II. BACKGROUND

On July 3, 2013, Anguiera pleaded guilty to Counts 1 and 2 of the superseding indictment, which charged him, respectively, with conspiring to possess with intent to distribute 1 kilogram or more of heroin, in violation of 21 U.S.C. § 846, and possessing a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924 (c)(1). (Docket Nos. 104, 160, 161.) These charges stemmed from Anguiera's leadership and operation of a large-scale drug-trafficking organization that distributed heroin, marijuana, and cocaine in the Southern Tier region of Western New York. (Presentence Report, Docket No. 314, ¶¶ 14, 15.) Under Anguiera's direction, this organization brought in bulk-quantities of cocaine from Connecticut; operated a "stash house" to cut, package, and store the controlled substances; used a network of individuals to distribute the controlled substances; and operated a "shoot up house" where drug users could go to shoot up heroin. (Id. ¶¶ 17-20.)

1

On July 16, 2014, this Court sentenced Anguiera to, *inter alia*, 120 months' imprisonment on Count 1, and 60 months' imprisonment on Count 2, to run consecutively, for a combined sentence of 180 months' imprisonment.[1] (Docket Nos. 311, 316.) The 120-month sentence on Count 1 constituted a non-guideline sentence, as it fell below the applicable guideline range of 168-210 months for that count. Anguiera is presently serving his sentence at FCI Elkton, with a release date of December 28, 2023.[2]

On June 8, 2020, Anguiera moved for compassionate release to home confinement or for a sentence reduction to time served under 18 U.S.C. § 3582 (c)(1)(A) on the ground that he is at heighted risk to develop COVID-19 given his medical conditions and the outbreak of the coronavirus at FCI Elkton. (Docket Nos. 434, 437, 439.) The government opposes Anguiera's motion. (Docket No. 438.)

### III. DISCUSSION

**A.    Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Gotti, 433 F. Supp. 3d 613, at *1 (S.D.N.Y. 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[3] provides as follows:

> The court may not modify a term of imprisonment once it has

---

[1] This Court subsequently denied Anguiera's motion to reduce his sentence based on Amendments 782 and 788 of the United States Sentencing Guidelines, both on eligibility grounds and as a matter of discretion. (Docket Nos. 354, 396.)

[2] See https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited June 17, 2020).

[3] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion. See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions. See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, at *1 (S.D.N.Y. 2020) (same).

2

> been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020). If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute. See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *1-2 (D. Conn. Mar. 19, 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); United States v.

3

Cassidy, 17-CR-116S, 2020 WL 1969303, at *3-8 (W.D.N.Y. Apr. 24, 2020) (finding exhaustion mandatory). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, [4] or (2) 30 days lapse from the date the warden of the defendant's facility receives the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i). See 28 U.S.C. § 994 (t). The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines. The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons". See U.S.S.G. §

---

[4] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf. 28 C.F.R. § 571.61 (a). Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director. Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."). Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel. Id. § 542.15 (a). A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

4

1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons" examples. The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described."[5] Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the

---

[5] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A). See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited June 17, 2020)). This Court assumes without deciding that this Program Statement is non-binding as it relates to the

applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision. It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that

> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g); and
>
> (3) the reduction is consistent with this policy statement.

See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction. See Gileno, 2020 WL 1307108, at *2.

**B.    Anguiera's Motion for Compassionate Release**

Anguiera has served 111 months of his 180-month sentence.[6] He is 37 years old and has very recently been diagnosed with seasonal asthma, which he claims makes him highly susceptible to COVID-19. He also claims to have comorbidities including obesity and a history of heavy smoking. Based on these circumstances, Anguiera requests that

---

"Other Reasons" provision of U.S.S.G. § 1B1.13 comment n. 1 (D), and that it is therefore not constrained by what the Director of the Bureau of Prisons might consider other extraordinary and compelling reasons for sentence reduction. See, e.g., United States v. Marks, 03-CR-6033L, 2020 WL 1908911, at *5-7 (W.D.N.Y. Apr. 20, 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13, including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

[6] With credit for good time, Anguiera is expected to actually serve 153 months of his 180-month sentence.

this Court reduce his sentence to time served or permit him to serve the remainder of his sentence in home confinement. If granted, Anguiera plans to live with his daughter's grandmother and her husband in an apartment in Buffalo, N.Y., and if permitted, to work for a maintenance company. (Affirmation of Victor Anguiera ("Anguiera Aff."), Docket No. 439-1, ¶ 4.) The government asks that Anguiera's motion be denied.

### 1. Exhaustion of Administrative Rights

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement. To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582 (c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated herein), this Court has found that the statutory exhaustion requirement is mandatory and cannot be excused. See Cassidy, 2020 WL 1969303, at *3-8; United States v. Schultz, 17-CR-193S, 2020 WL 1872352, at *3-6 (W.D.N.Y. Apr. 15, 2020); see also United States v. Montanez, 15-CR-122-FPG, 2020 WL 2183093, at *2-11 (W.D.N.Y. May 5, 2020) (finding § 3582 (c)(1)(A)'s exhaustion requirement mandatory).

Here, Anguiera submitted his request for a sentence modification to the warden of FCI Elkton on April 27, 2020. (Docket No. 438-1.) The warden denied his request on May 4, 2020. (Docket No. 438-2.) Thirty days having clearly lapsed since April 27, 2020, this Court finds that Anguiera has satisfied the statutory exhaustion requirement, and the

7

government does not contend otherwise.

**2. Extraordinary and Compelling Reasons for Sentence Reduction**

Anguiera's motion is premised on his contention that he is at high risk for COVID-19 due to asthma, a history of smoking, and obesity. There is, however, no mention of any of these three conditions in Anguiera's presentence report prepared on June 24, 2014. (Docket No. 314.)

The submitted medical records indicate that Anguiera was diagnosed with seasonal asthma just eight weeks ago, on April 24, 2020, after he reported to a nurse at the medical unit the previous day that he had "a dry cough for 2 weeks" and "shortness of breath three days ago." (Medical Records, Docket No. 437, pp. 7, 8.) Anguiera told the nurse that he had a "history of asthma," "history of smoking a lot in the past," and last used an inhaler in 2006. (Id.) Although the nurse noted that Anguiera coughed occasionally during the exam, his pulmonary testing was within normal limits. (Id. p. 8.) The nurse gave Anguiera an Albuterol inhaler to be used four times per day for 30 days, with no refills. (Id.) The next day, a physician's assistant diagnosed Anguiera with seasonal asthma. (Id. p. 13.)

Anguiera maintains that this is not a new condition. In an affidavit, he attests that he suffered an attack in 2003 that required him to go to the hospital, where he was diagnosed with asthma and prescribed an Albuterol inhaler. (Anguiera Aff., ¶ 2.) Investigation into that episode revealed that Anguiera was in fact treated at MercyHealth Saint Elizabeth Youngstown Hospital in 2003, and that his brother and mother both recall the episode. (Declaration of Jennifer L. Dimitroff, Docket No. 434-5, ¶¶ 2, 3.)

Anguiera also claims two comorbidities: history of smoking and obesity. He claims

to have smoked one pack of cigarettes per day from 1997 to 2004, and to have regularly smoked cigars from 2004 to 2006. (Anguiera Aff., ¶ 3.) And at 6' 0' tall and 232 lbs. with a body mass index of 31.5, Anguiera just qualifies as obese since his body mass index exceeds 30.0.[7]

Having thoroughly reviewed the record, this Court finds that none of Anguiera's medical conditions constitute an extraordinary and compelling reason for a sentence reduction under the medical-condition section of U.S.S.G. § 1B1.13. None of the conditions are a terminal illness (i.e., a serious and advanced illness with an end of life trajectory), see U.S.S.G. § 1B1.13 comment n. 1 (A)(i); nor are any a serious condition, impairment, or age-related deterioration that substantially diminishes Anguiera's ability to provide self-care, see U.S.S.G. § 1B1.13 comment n. 1 (A)(ii). See United States v. Korn, 15-CR-81S, 11-CR-384S, 2020 WL 1808213, at *3-6 (W.D.N.Y. Apr. 9, 2020).

As for the "Other Reasons" section of U.S.S.G. § 1B1.13 comment n. 1 (D), which provides for relief if there exist extraordinary and compelling reasons for sentence reduction other than (or in combination with) what is specifically prescribed, Anguiera maintains that his medical conditions make him highly susceptible to contracting and dying from COVID-19, particularly because he is housed in a "hotspot" facility that has had difficulty containing the coronavirus. See United States v. Resnick, 14 CR 810 (CM), 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020) (considering compassionate-release request based on a defendant's high susceptibility to COVID-19 under the "catch-all" provision of U.S.S.G. § 1B1.13 comment n. 1 (D)). Such is not the case.

COVID-19, of course, is the sweeping, potentially deadly, worldwide pandemic that

---

[7] https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited June 17, 2020).

required the President of the United States to declare a national emergency on March 13, 2020. The Centers for Disease Control and Prevention ("CDC") has determined that individuals with certain underlying medical conditions, particularly if not well controlled, are at high risk for severe illness from COVID-19.[8] Those medical conditions include *moderate-to-severe* asthma and *severe* obesity (defined as a body mass index of 40.0 or higher).[9] Anguiera falls into neither high-risk category.

The evidence of Anguiera's asthma and "history of heavy smoking" is not compelling. Anguiera reportedly had a single asthmatic episode 17 years ago. It was then not until *after* the COVID-19 outbreak that he reported a dry cough and some shortness of breath. But his pulmonary exam and chest X-ray were normal. And he was diagnosed with only seasonal asthma and given an inhaler with no refills. At best then, Anguiera demonstrates intermittent asthma, the lowest classification, which is not a COVID-19 high-risk factor.[10]

Similarly, even considering Anguiera's "history of heavy smoking" in conjunction with his asthma, this Court is not persuaded that he is at high-risk for COVID-19. Anguiera did not report any cigarette or cigar use to the probation officer or otherwise indicate a history of heavy smoking, despite detailing an exhaustive list of medical conditions and describing himself as being in "poor health." (Presentence Report, ¶ 87.) The only indication that Anguiera has a history of heavy smoking is his own post-COVID-19 report

---

[8] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 17, 2020).

[9] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 17, 2020).

[10] See https://www.uofmhealth.org/health-library/hw161158 (last visited June 17, 2020) (defining intermittent asthma as, *inter alia*, symptoms occurring fewer than twice per week that do not interfere with normal activities).

to the medical unit as expanded on in his affidavit. Beyond this non-persuasive self-reporting, there is no objective evidence of any "history of heavy smoking." Consequently, this Court finds that Anguiera has failed to establish that he is at heightened risk for COVID-19 due to a history of smoking.

Finally, the evidence of Anguiera's obesity is equally non-compelling. While Anguiera just barely qualifies as "obese" given his body mass index of 31.5, neither the presentence report nor the medical records reveal any past or ongoing weight-related issues. In any event, it is undisputed that Anguiera is not *severely* obese, which is the COVID-19 high-risk factor.

Accordingly, this Court finds that Anguiera fails to demonstrate extraordinary and compelling medical conditions that would warrant compassionate release. And this is so despite Anguiera presently being housed at FCI Elkton, which this Court has recognized is a "hotspot" for COVID-19. See United States v. Schultz, 17-CR-193S, 2020 WL 2764193, at *6 (W.D.N.Y. May 28, 2020). As of June 17, 2020, the Bureau of Prisons reports that 39 inmates at FCI Elkton are positive for COVID-19, seven staff are positive, and nine inmates have died.[11] Overall, there have been 607 inmate and 53 staff cases at FCI Elkton.[12]

But despite their seriousness,[13] the conditions at FCI Elkton alone do not "warrant

---

[11] See https://www.bop.gov/coronavirus (last visited June 18, 2020).

[12] See https://www.bop.gov/coronavirus (last visited June 18, 2020).

[13] Other federal district courts have also acknowledged the difficult conditions at FCI Elkton. See, e.g., United States v. McIndoo, 1:15-CR-142 EAW, 2020 WL 2201970, at *4 (W.D.N.Y. May 6, 2020) (describing conditions at FCI Elkton as "dire"); Montanez, 2020 WL 2183093, at *1 (describing FCI Elkton as "particularly hard it by COVID-19"). In addition, the conditions at FCI Elkton are presently being litigated in a class action suit brought by inmates. See Wilson v. Williams, Case No. 4:20-cv-794, 2020 WL 1940882, at *2 (N.D. Ohio Apr. 22, 2020) vacated by No. 20-3447, 2020 WL 3056217 (6th Cir. June 9, 2020).

the wholesale release of all its inmates." United States v. McIndoo, 1:15-CR-142 EAW, 2020 WL 2201970, at *4 (W.D.N.Y. May 6, 2020).  This is because "the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." United States v. Nwankwo, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020); see also United States v. Yeison Saldana, No. 15 CR 712, 2020 WL 2395081, at *2 (S.D.N.Y. May 12, 2020) ("Although the Court is alarmed by the conditions that Defendant claims exist at the MCC, the Court finds that the danger Defendant faces from infection with COVID-19 does not amount to an extraordinary and compelling reason for granting compassionate release."); United States v. Shawn Olszewksi, No. 15 CR 364, 2020 WL 2420483, at *2-3 (S.D.N.Y. May 12, 2020) ("In the absence of underlying medical conditions and advanced age, this Court does not find 'extraordinary and compelling reasons' that warrant release."); United States v. Jaramillo, No. 17 CR 4, 2020 WL 2306564, at *1 (S.D.N.Y. May 8, 2020) (denying compassionate release motion where defendant failed to demonstrate a specific medical condition that placed him at extraordinary risk of infection or severe illness from COVID-19).

Consequently, in the absence of medical conditions that place him at high-risk for COVID-19, this Court finds that Anguiera has failed to demonstrate extraordinary and compelling reasons for compassionate release. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional

efforts to curtail the virus's spread"); United States v. Eberhart, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13").

### 3. Consideration of the § 3553 (a) Factors

Even if Anguiera had demonstrated extraordinary and compelling reasons for a sentence reduction (which he has not), this Court would find that those reasons are outweighed by consideration of the § 3553 (a) factors and that Anguiera's original sentence would be undermined by a sentence reduction. See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 2020 WL 91399, at *7. The § 3553 (a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553 (a).

Anguiera operated a large-scale drug-trafficking operation. He had an extensive organization, including salaried drug distributers, both "stash" and "shoot up" houses, and an out-of-state source of supply. Numerous firearms, controlled substances, and drug paraphernalia were found and seized by law enforcement upon the execution of various search warrants. Anguiera admitted that he possessed the numerous firearms in furtherance of his drug-trafficking activities and admitted that at least 3 but less than 10

kilograms of heroin was involved in his relevant conduct.

For this serious criminal activity, this Court imposed a 180-month sentence, which was 48 months below the lowest end of the guideline range. That is a fair, just, and reasonable sentence which, in this Court's view, would be severely undermined by a reduction to time served. Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant. See 18 U.S.C. § 3553 (a). Such a reduction would also result in unwarranted sentencing disparities. Id. Accordingly, even if it could be found that Anguiera demonstrated extraordinary and compelling reasons for a sentence reduction, this Court would find those reasons outweighed by consideration of the § 3553 (a) factors.

### 4. Consistency of a Reduction with U.S.S.G. § 1B1.13

Finally, even if Anguiera had demonstrated extraordinary and compelling reasons for a sentence reduction that are not outweighed by consideration of the § 3553 (a) factors (which he has not), this Court would find that a sentence reduction is not consistent with U.S.S.G. § 1B1.13. See 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction be consistent with applicable policy statements issued by the Sentencing Commission); U.S.S.G. § 1B1.13 (2). This inquiry requires a determination as to whether the defendant poses a danger to the safety of any person or to the community if released.

Not only does the nature of Anguiera's criminal conduct itself make Anguiera inherently dangerous, particularly as it relates to his admitted employment of multiple firearms to ensure the security of his drug-trafficking organization, but he also has demonstrated ties to the Netas Gang, which supplied his operation with controlled

substances out of Connecticut.  (Presentence Report, ¶ 20.)  Moreover, at the Netas Gang's request, Anguiera harbored an individual from Puerto Rico who was wanted for murder.  (Id.)

Thus, given the nature of Anguiera's conviction and his involvement with gang members and other dangerous individuals, this Court finds that he remains a danger to the community if released.  This Court would therefore deny Anguiera's motion on this basis as well.

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that a sentence reduction under 18 U.S.C. § 3582 (c)(1)(A) is not warranted.  Anguiera's motion will therefore be denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Anguiera's Motion for Compassionate Release (Docket No. 434) is DENIED.

SO ORDERED.

Dated:     June 23, 2020
           Buffalo, New York

                              s/William M. Skretny
                              WILLIAM M. SKRETNY
                              United States District Judge